IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| **THE ESTATE OF JESSE TURNBOW and JACINDA SCRUGGS,**<br><br>             **Plaintiffs,**<br>**v.**<br><br>**OGDEN CITY, OFFICER ED MAHON, OFFICER JOHN SATTELMAIR, OFFICER DEREK DRAPER, and JOHN DOES 1-20,**<br><br>             **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:07cv114<br><br>Chief District Judge Tena Campbell<br><br>Magistrate Judge Paul M. Warner |

This matter was referred to Magistrate Judge Paul M. Warner by Chief District Judge Tena Campbell pursuant to 28 U.S.C. § 636(b)(1)(A). Before the court are (1) the Estate of Jesse Turnbow and Jacinda Scruggs's (collectively, "Plaintiffs") motion to compel[1] and (2) Ogden City, Officer Ed Mahon, Officer John Sattelmair, and Officer Derek Draper's[2] (collectively, "Defendants") motion for an order directing the Bureau of Criminal Identification (the "BCI") to produce records.[3] The court has carefully reviewed the memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of

---

[1] *See* docket no. 20.

[2] Officer Ed Mahon, Officer John Sattelmair, and Officer Derek Draper will be collectively referred to as the "Defendant Officers."

[3] *See* docket no. 25.

Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary.  *See* DUCivR 7-1(f).

## DISCUSSION

Plaintiffs filed this 42 U.S.C. § 1983 civil rights action seeking damages allegedly resulting from the death of Jesse Turnbow ("Mr. Turnbow").  On December 18, 2006, the Defendant Officers responded to reports that a man was shooting a sawed off shotgun while walking through an Ogden neighborhood.  When the Defendant Officers located him, the man, who turned out to be Mr. Turnbow, fired multiple times at them.  The Defendant Officers responded with fire.  Mr. Turnbow died during the confrontation.

### (1)  Plaintiffs' Motion to Compel

Plaintiffs are seeking an order compelling Ogden Police Chief Jon Greiner ("Chief Greiner") to appear for a deposition.  While Plaintiffs concede that Chief Greiner has no personal knowledge of the incident or investigation at issue in this case, Plaintiffs contend that they need to depose him to determine who made the policies governing the use of force for the Ogden City Police Department.  Plaintiffs further assert that it may be assumed that Chief Greiner made those policies and that "he deals with hiring, training, and a number of other factors that relate to this case."[4]

Defendants oppose the motion on the grounds that Chief Greiner has no personal knowledge of the shooting at issue in the case or the subsequent investigation.  Defendants

---

[4] Docket no. 21.

further assert that Plaintiffs have not identified which policies are allegedly unconstitutional nor does Chief Greiner possess any personal information regarding the Defendant Officers' training or use of force histories.  Defendants state that Plaintiff has already deposed one of the three members of the Ogden City Shooting Review Board and, at the time this motion was filed, had scheduled the depositions of the other two, one of whom supervises officer training.  Plaintiff also deposed the Deputy Weber County Attorney, who had determined that the officers were justified in using deadly force.  Defendants contend that they have produced the Defendant Officers' training records and use of force histories and that their depositions were scheduled for the end of March.  Thus, Defendants conclude that because they have provided Plaintiffs with the names of the individuals who have first-hand knowledge of the information relevant to municipal liability, this court should not compel Chief Greiner to appear for a deposition.

It is well settled that trial courts have broad discretion when ruling on discovery matters. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990).  Under rule 26 of the Federal Rules of Civil Procedure, this "court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).  In addition, as a general rule, courts have held that depositions of high-ranking government officials should not be a routine part of litigation unless the party seeking the deposition can demonstrate that there is some reason to believe that it will produce or lead to admissible evidence. *See, e.g., Oliveri v. Rodriguez*, 122 F.3d 406, 409-10 (7th Cir. 1997) (stating that "the superintendent of the Chicago police is a busy official who should not be taken

3

away from his work to spend hours or days answering lawyers' questions unless there is a real need"); *In re Office of Inspector Gen. R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991) ("[E]xceptional circumstances must exist before the involuntary depositions of high agency officials are permitted"). Courts are also reluctant to allow the depositions of high-ranking government officials absent a demonstration that they have personal knowledge of the matter. *See, e.g., Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wisc. 1994) ("In general, high ranking government officials enjoy limited immunity from being deposed in matters about which they have no personal knowledge."), *aff'd*, 60 F.3d 1234 (7th Cir. 1995).

Plaintiffs have failed to demonstrate that the information they seek from Chief Greiner is unavailable from other sources. Rather, as Defendants have indicated, the Defendant Officers' training records and use of force histories have already been produced, as well as the names of the individuals having personal knowledge regarding those records and information relevant to municipal liability. In addition, Plaintiffs have also failed to demonstrate that Chief Greiner has any first-hand knowledge of the shooting or personal information regarding the Defendant Officers' training or use of force histories.

Based on the foregoing, the court **DENIES** Plaintiffs' motion to compel. The court is unwilling to order Chief Greiner to appear for a deposition, unless and until Plaintiffs can demonstrate that the information they seek is unavailable from other sources and that Chief Greiner has personal information relevant to the shooting incident that is discoverable.

### (2) Defendants' Motion Regarding Criminal Records

Defendants move the court for an order directing the BCI to produce the criminal records of Mr. Turnbow; Jacinda Scruggs ("Ms. Scruggs"), Mr. Turnbow's common law spouse; and Lyndell Scruggs ("Lyndell"), Mr. Turnbow and Ms. Scruggs's fifteen-year-old son. Defendants assert that this information is relevant to proving, or disproving, Plaintiffs' claims and asserted damages. Defendants contend that because Plaintiffs' damage claims are premised upon the alleged loss of Mr. Turnbow's future earnings and the emotional and psychological injury his death has allegedly caused, the criminal records may provide an external and objective source to measure the strength and extent of the familial bonds.

Plaintiffs do not object to the production of Mr. Turnbow's and Ms. Scruggs's criminal records. Plaintiffs do, however, object to the discovery of Lyndell's criminal records because he is a juvenile and juvenile records are given extra protection from disclosure. *See, e.g.*, *In re N.H.B.*, 769 P.2d 844, 847 (Utah Ct. App. 1989) (noting that juveniles are "shielded from publicity" and that juvenile proceedings are confidential). In response, Defendants assert that they should be allowed access to Lyndell's records because under Plaintiffs' asserted theory of damages, prior to the incident, Lyndell was a well-adjusted young man who was respectful of authority figures. As a result of the incident, however, Plaintiffs now assert that "[h]e has a difficult time at school, his attitude has changed drastically to the point where he does not listen to anyone with authority."[5] Furthermore, Defendants contend, under Utah law, a party need only show a "legitimate interest" in the content of the juvenile's records to compel inspection. *See*

---

[5] Docket no. 34.

Utah Code Ann. § 78- 3a-206(3) (stating in relevant part that "[w]ith the consent of the judge, court records may be inspected by . . . persons having a legitimate interest in the proceedings"). Defendants argue that they have a legitimate interest in the inspection of Lyndell's criminal record because Plaintiffs have placed Lyndell's emotional state directly at issue in this case. *See, e.g.*, *Bottomly v. Leucadia National*, 163 F.R.D. 617, 619 (D. Utah 1995) (stating that once a litigant places his/her emotional or psychological state at issue, the litigant "waives any privacy claims to those matters which are related to causation and damages.") (citing *Mitchell v. Hutchings*, 116 F.R.D. 481, 484 (D. Utah 1987)).

This court agrees. Defendants have demonstrated that they have a legitimate interest in Lyndell's juvenile criminal record, if any. Plaintiffs have claimed that as a result of Mr. Turnbow's death, Lyndell has suffered from depression and has had a complete attitude change regarding authority figures. Specifically, Plaintiffs have claimed damages as follows:

> **INTERROGATORY NO. 2.**: Please set forth in detail a description of the type and nature of all injuries or damages you claim to have suffered as a result of [Mr.] Turnbow's death . . . .
>
> **ANSWER**: Lyndell has suffered a great deal from the loss of his father. He has been depressed and unable to understand the circumstances of his father's death. He has been unable to cope with the fact that he will never see his father again. This tragedy has affected Lyndell in ways I will never know. He has a difficult time at school, his attitude has changed drastically to the point where he does not listen to anyone with authority.

Accordingly, because Plaintiffs have placed Lyndell's psychological state at issue, information providing a "before" and "after" snapshot of Lyndell's emotional state is thus relevant to calculating the detrimental effect the circumstances of his father's death has had upon him. That

said, the court is cognizant of the sensitive nature of juvenile records and proceedings. As such, the court orders that prior to disclosure of the Lyndell's BCI records, Defendants shall enter into a confidentiality agreement to protect Lyndell's records from public disclosure.

Accordingly, Defendant's motion is **GRANTED**. The BCI is ordered to produce the records of Mr. Turnbow, Ms. Scruggs, and Lyndell. Lyndell's records shall be produced subject to a confidentiality agreement to be drafted by Plaintiffs.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED THAT**:

(1) Plaintiffs' motion to compel Chief Greiner's deposition is **DENIED**.

(2) Defendants' motion for an order directing the BCI to produce the records of Jesse Turnbow, Jacinda Scruggs, and Lyndell Turnbow is **GRANTED.** Lyndell Turnbow's records shall be produced subject to a confidentiality agreement.

**IT IS SO ORDERED.**

DATED this 9th day of May, 2008.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge