**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THE ESTATE OF JESSE TURNBOW &
JACINDA SCRUGGS,

    Plaintiffs - Appellants,

v.

OGDEN CITY, OFFICER ED MAHON,
OFFICER JOHN SATTELMAIR,
OFFICER DEREK DRAPER, JOHN
DOES 1-20,

    Defendants - Appellees.

No. 09-4071
D.C. No. 1:07-CV-00114-TC
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO, HOLLOWAY**, and **HOLMES**, Circuit Judges.

---

This appeal is from a grant of summary judgment in defendants' favor in a civil rights action pursuant to 42 U.S.C. § 1983, alleging police officers used excessive force in the fatal shooting of Jesse Turnbow.[1] The District Court held plaintiff failed to show a

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Ms. Jacinda Scruggs is the named plaintiff in the complaint. She sued Officers Ed Mahon, John Sattelmair, Derek Draper, and Ogden City on her own behalf and as a representative of Mr. Turnbow's Estate. Ms. Scruggs subsequently acknowledged she only had standing to sue in her representative and not personal capacity. R., Vol. V, at 1123, n.1. Therefore, all references to the plaintiff will be singular.

genuine dispute of material fact as to whether the officers had violated Mr. Turnbow's constitutional rights. As such, the officers were entitled to qualified immunity and summary judgment was appropriate. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.[2] Because the facts, even when viewed in the light most favorable to the plaintiff, do not support a finding that defendant officers violated Mr. Turnbow's constitutional rights, we AFFIRM.

## BACKGROUND

The facts of this case are tragic. The altercation can be described in three phases: the facts of the first phase are not in dispute but the facts of the second and third phases are disputed by the parties.

*Phase I:* On December 18, 2006, Ogden City Police received reports of a man firing a shotgun in a residential neighborhood. Defendant Ed Mahon was the first police officer on the scene, arriving shortly before 6:00 p.m. Officer Mahon saw Mr. Turnbow, who matched the previously given description of the man carrying the shotgun. The officer exited his vehicle and approached. Mr. Turnbow pulled a sawed-off shotgun from under his coat and stepped behind a small tree. Officer Mahon called to Mr. Turnbow to drop the gun. In response Mr. Turnbow fired at the officer, shattering the police cruiser's windshield. Officer Mahon repeated his command and retreated to the rear of his vehicle. Officer Mahon returned fire, shooting Mr. Turnbow in the leg, buttocks, or hip.

*Phase II:* Mr. Turnbow came around from behind the tree and Officer Mahon

---

[2] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

repeated his command to drop the gun. In response, Mr. Turnbow fired another shot at the officer. Officer Mahon fired again, hitting Mr. Turnbow and causing him to fall down on the ground with the shotgun in or near his lap. At this point, the two other defendants, Officers John Sattelmair and Derek Draper, arrived. Both officers approached Mr. Turnbow from different angles in order to disarm him, both firing their weapons at him.

*Phase III:* The officers and several of the additional fourteen eyewitnesses testified Mr. Turnbow grabbed the gun from his lap and attempted to point it at the officers. When Officer Draper approached to retrieve the shotgun, Mr. Turnbow again attempted to raise the gun at the officers and all three fired on Mr. Turnbow until he fell back. Mr. Turnbow died at the scene, having been shot about twenty-one times. Police investigators found fifty expended rounds that had been fired by the officers and eight spent shotgun shells belonging to Mr. Turnbow.

Plaintiff relied on the deposition testimony of three eyewitnesses who testified that in the final moments Mr. Turnbow was not attempting to raise the gun and point it at the officers but attempting to raise his hands and was gasping for air. All three confirmed that while Mr. Turnbow did not have his gun in his hands, it was within arms' reach and his hands were moving. Two of the three described the officers yelling at Mr. Turnbow to "freeze" but he did not because, as they opined, he was dying at the time.

Plaintiff additionally deposed two expert witnesses, both of whom testified that it was possible Mr. Turnbow was reaching for his gun when the officers fired their final shots and if the officers believed he was doing so then the shooting would have been

justified.

Plaintiff also asserted state law claims for negligence and intentional infliction of emotional distress. The District Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims. No issue is raised on appeal concerning state law.

The finding and conclusions on summary judgment were stated by Judge Campbell in her Order and Memorandum Decision of March 18, 2009. Viewing the evidence in the light most favorable to the Plaintiff, *inter alia* the District Court found that when the officers fired their final shots, Mr. Turnbow was still moving and his gun was within arms' reach. The court held it was objectively reasonable for an officer in that particular situation to have believed Mr. Turnbow could have been reaching for his gun and that the officers were in danger of serious bodily harm. Therefore, the court refused to find Mr. Turnbow's constitutional rights had been violated and thus Ogden City and the officers were entitled to the protection of qualified immunity. Summary judgment for the Defendants was granted.

## ANALYSIS

When a defendant moves for summary judgment and argues he is entitled to qualified immunity, it becomes the plaintiff's burden to establish that the defendant violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). There are two parts to the qualified immunity inquiry: first, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* If a constitutional right was violated, the second inquiry is

whether that constitutional right was clearly established at that time. *Id.* While courts may consider these factors in whichever order they choose, in a fact-driven analysis, the traditional order is most effective. *Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009). We review de novo the grant of summary judgment based on a qualified immunity defense. *Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005).

The District Court granted summary judgment in favor of defendants, holding the plaintiff failed to establish the officers had violated Mr. Turnbow's constitutional rights. R., Vol. V, at 1124; *see Holland v. Overdorff*, 268 F.3d 1179, 1186 (10th Cir. 2001) (explaining plaintiff's failure to establish a violation of constitutional rights is sufficient grounds to grant summary judgment on the basis of qualified immunity). On appeal, plaintiff asserts the District Court erred by: 1) holding there was no genuine factual dispute as to whether Mr. Turnbow's constitutional rights had been violated; 2) making credibility determinations, thereby holding the officers did not violate Mr. Turnbow's clearly established right to be free from excessive force; and 3) refusing to hold Ogden City liable for the conduct of its officers.

Because we find the District Court correctly determined there was no violation of Mr. Turnbow's constitutional rights, the other two issues need not be reached. *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *Thomson v. Salt Lake County*, 584 F.3d 1304, 1309 (10th Cir. 2009) (concluding "Plaintiffs have not met their burden of demonstrating a constitutional

violation . . . . It was therefore appropriate to grant summary judgment . . . on the basis of qualified immunity. Because Plaintiffs have not proven a constitutional violation, their . . . claim against the County also must fail.").

Excessive force claims are evaluated using the Fourth Amendment's standard of objective reasonableness, which is judged from the perspective of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). "The use of deadly force is justified under the Fourth Amendment if a reasonable officer in the Defendant's position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." *Phillips*, 422 F.3d at 1083 (quotation omitted); *Jiron v. City of Lakewood*, 392 F.3d 410, 419 n.8 (10th Cir. 2004) ("[W]hen a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation - i.e., the first step of the qualified immunity analysis - a finding of qualified immunity does preclude the imposition of municipal liability.").

"Because police officers are often forced to make split-second judgments– in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier*, 533 U.S. at 205. "What may later appear to be unnecessary when reviewed from the comfort of a judge's chambers may nonetheless be reasonable under the circumstances presented to the officer at the time." *Phillips*, 422 F.3d at 1080.

The totality of the circumstances should be used when evaluating an excessive

force claim, including whether the officers were in danger. *Id.* at 1083. "Among the factors to consider are the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Jiron*, 392 F.3d at 414-15. The officers are not required to be correct in their assessment of the danger presented by the situation, only that their assessment be objectively reasonable. *Id.* at 415; *see also Saucier*, 533 U.S. at 205 ("If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.").

Even when viewing the evidence in the light most favorable to plaintiff, it was objectively reasonable for the officers to believe Mr. Turnbow posed a serious threat of physical harm to the officers or others and that deadly force was necessary to stop him. While it is regrettable and tragic that Mr. Turnbow was shot so many times, the facts are not to be viewed with the benefit of the "20/20 vision of hindsight" but from the perspective of a reasonable officer knowing the available facts at the time of the incident. *See Graham*, 490 U.S. at 396.

The officers were faced with an armed and violent individual who had already fired at least two shotgun blasts at them. While Mr. Turnbow's shotgun may not have been in his hands at the moment the last few shots were fired, he was moving his hands and the gun was within arms' reach. *See Phillips*, 422 F.3d at 1083 ("[A]lthough the precise moment before [the final shots were fired] is a critical factor, the events leading up to that moment are also extremely relevant.").

The totality of the circumstances made it objectively reasonable for the officers to believe Mr. Turnbow presented a serious threat of physical harm.  Mr. Turnbow was refusing to freeze despite the officers' repeated orders.  He was acting in an irrational and unpredictable manner by initially firing the weapon while walking down the street, the behavior which triggered Officer Mahon's arrival.  Mr. Turnbow gave the officers no indication he had any intention to surrender.  The danger presented by Mr. Turnbow had escalated considerably from the point when Officer Mahon initially approached Mr. Turnbow to speak with him.  It was unnecessary for the officers to have to wait for Mr. Turnbow to once again raise his shotgun and fire at the officers before it would be reasonable for them to shoot Mr. Turnbow.

Since the officers were acting in an objectively reasonable manner there was no constitutional violation and thus they are shielded by qualified immunity.  *Saucier*, 533 U.S. at 201.  Because the officers cannot be held liable, neither can Ogden City.  *Jiron*, 392 F.3d at 419.  Therefore, the District Court properly granted defendants' motion for summary judgment.

## CONCLUSION

The District Court's grant of summary judgment in defendants' favor is AFFIRMED and defendants' request for costs on appeal pursuant to Federal Rules of

Appellate Procedure 39(a)(2) is GRANTED.

          Entered for the Court

          William J. Holloway, Jr.
          Circuit Judge

**UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
OFFICE OF THE CLERK**

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker<br>Clerk of Court | July 12, 2010 | Douglas E. Cressler<br>Chief Deputy Clerk |

Mr. Michael Studebaker
2550 Washington Boulevard
Suite 331
Ogden, UT 84401

**RE:    09-4071, Turnbow, et al v. Ogden City, et al**
       Dist/Ag docket: 1:07-CV-00114-TC

Dear Counsel:

Attached is a copy of the order and judgment.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:    Allan L. Larson
       Heather S. White

EAS/at